IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 12-02105 (ESL) |
| DAVID VARGAS MOYA<br>SANDRA RAMIREZ PEREZ | CHAPTER 13 |
| Debtors | |
| DAVID VARGAS MOYA<br>SANDRA RAMIREZ PEREZ | |
| Plaintiffs | ADV. PROC. 16-00087 |
| VS. | |
| ADMINISTRACION SISTEMAS DE<br>RETIRO DE EMPLEADOS DEL<br>GOBIERNO Y LA JUDICATURA, ET<br>AL | |
| Defendants | |

OPINION AND ORDER

This case is before the court upon the *Motion for Summary Judgment* (Docket No. 41) filed by the Plaintiffs, David N. Vargas Moya and Sandra Ramirez Pérez ("Plaintiffs" or "Debtors"); the *Response to Plaintiffs Motion for Summary Judgment and Memorandum of Law in Support Thereof* filed by the Administración Sistemas de Retiro de los Empleados de Gobierno y la Judicatura ("Retiro") (Docket No. 42); and the *Reply to Support of Summary Judgment* filed by the Plaintiffs (Docket No. 57).

Procedural History


The Debtors, David Noel Vargas Moya and Sandra Ramirez Pérez, filed a chapter 13 bankruptcy petition on March 22, 2012. (Lead Case 12-02105, Docket No. 1). Debtors' plan dated March 12, 2012 (Lead Case, Docket No. 2) was confirmed on May 30, 2012. (Lead case, Docket No. 22). A post-confirmation modification of the plan was filed by the Debtors on July 7, 2013 (Docket No. 56) and granted by the court on March 8, 2016 (Lead Case, Docket No. 76).

On April 25, 2016, the Debtors, David Noel Vargas Moya and Sandra Ramirez Pérez filed the present Adversary Proceeding against the Administración Sistemas de Retiro de los Empleados de Gobierno y la Judicatura ET AL (Docket No. 1). The Plaintiffs alleged that Retiro, with actual notice and knowledge of the bankruptcy case, willfully collected an unsecured claim scheduled in Debtor's bankruptcy case which was subject to the automatic stay. The Plaintiffs alleged that Retiro had attempted to obtain secured status of its lien by presenting an unregistered mortgage note in the Property Registrar after the filing of the petition. Moreover, the Plaintiffs alleged that the Defendant resumed monthly garnishments post-petition from the Debtor's paycheck, and that they have been "seriously distressed and damaged" by Retiro's wage garnishment. On the same date, the Plaintiffs filed an *Urgent Motion for Temporary Restraining Order and/or Preliminary Injunction* (Docket No. 2) and *Memorandum of Law in Support for Temporary Restraining Order and/or Preliminary Injunction* (Docket No. 3).   The Plaintiffs alleged that the Defendant was causing irreparable damage to the Debtors, the bankruptcy estate and the interest of other creditors, as Retiro's actions jeopardized the Debtors' ability to continue their Chapter 13 payments and obtain the Discharge Injunction Order upon completion of the payment plan. On their *Memorandum of Law*, the Plaintiffs argued that the prongs for temporary restraining order and/or preliminary injunction were met, that is: (a) that the Defendant had clearly violated the automatic stay while attempting to collect the debt post-petition and, therefore, there was likelihood of success on the merits, (b) that the Defendants were causing irreparable harm to the Debtors, as the Defendants actions forced them to default on the confirmed payment plan, (c)

that in the balance of equities, a TRO or injunction will not harm the Defendant as they had failed to collect for a "now unrecoverable credit for forty seven months", and (d) that the effect of the public interest favored injunctive relief "since it would send a message to third parties that they must respect the Orders of this Honorable Court, specifically the Automatic Stay Order…"

Retiro filed its *Answer for Motion for Temporary Restraining Order and/or Preliminary Injunction* (Docket No. 13), stating that at the moment the request for temporary restraining order or preliminary injunction was filed, Retiro had already requested the agency to stop the deductions of Debtor's wage and that Retiro had informed the Debtors that it could take a "few payrolls" in order for it to stop. Aditionally, the Defendant stated that the Plaintiff failed to meet the requirements for injunctive remedy, as they had no probability to prevail on the merits. The Defendants alleged that the Debtors had no legal basis to assert that Retiro's claim was unsecured, considering that the debt is secured "as per 3 L.P.R.A. §779a, and cannot be discharged under section 523(a)(18) of the Title 11 of US Code". As stated by the Defendant "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity".

On May 18, 2016, the Defendant filed its *Motion for Extension of Time to File Dispositive Motion or Otherwise Plead* (Docket No. 15). On May 20, 2016, the court held the TRO and/or temporary injunctive relief hearing, and the request was held in abeyance (Docket No. 18). Aditionally, the Defendant was granted until June 20, 2016, to answer the complaint. On June 20, 2016, Retiro filed a *Motion to Dismiss Adversary Proceeding* stating that the Plaintiffs had failed to state a claim against the Defendant upon which relied could be granted (Docket No. 20) and an *Answer to Complaint* (Docket No. 21). Retiro asserted that the Debtors had applied for a mortgage loan which was approved on September 28th, 2010, and received the amount of $100,00.00. Pursuant to the Promissory Note and Pension Loan Repayment Schedule, the Debtors were to make monthly payments continuously until February 2041. The Debtor signed an authorization consenting to Retiro's withdrawal of the payment from his monthly wages and consenting to a lien on his retirement funds, present and future, as well as all the savings that he might have in

the Puerto Rico Commonwealth Employees Association ("AEELA"), including any other benefit or payment, which the debtor might earn from the government of the Commonwealth of Puerto Rico. Aditionally, the Retiro statute grants a statutory lien that deems all its claims as secured with the Debtors' retirement funds. Furthermore, the Defendant alleged that section 362(b)(19) allowed Retiro to continue the withholding from Debtors' wages. The Defendant stated that the collection of a retirement loan is excepted from the automatic stay. Aditionally, section 1322(f) states that a plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute "disposable income" under section 1325. Furthermore, the Defendant alleged that the Debtors' personal obligation to the Retiro loan is not discharged, pursuant to §523(a)(18). The Defendant alleged that it meets the exception of section 362(b)(19) which requires: (1) that the plan must be a pension, profit-sharing, stock bonus, or other plan established under one of 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code Sections that is sponsored by the debtor's employer or an affiliate, successor or predecessor of such employer; and (2) the loan must be a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or subject to section 72(p) of the Internal Revenue Code or a loan from a thrifts saving plan permitted under subchapter III of Chapter 84 of Title 5 of the United States Code that satisfies the requirements of 5 U.S.C.A. §8433(g). The Defendant additionally alleged that punitive damages cannot be imposed to the Commonwealth or its agencies pursuant to 42 U.S.C. §1981a(b)(1).

The Debtors filed their *Response to Motion to Dismiss* alleging that: (1) the provisions of the Bankruptcy Code in which the Defendant relies when discussing sections 362(b)(19) and 523(a)(8) "only regulate the effect of the automatic stay and the discharge upon personal loan benefits to thrift savings plan participants and must not be confused with mortgage loan benefits offered under those plans at issue in this proceeding"; (2) the garnishments against Debtor's salary were meant to enforce the mortgage loan and not the statutory lien; (3) section 362(a)(4) and/or (5) forbids enforcement of "any lien"; (4) under Puerto Rico Law, recording is essential for the validity of a mortgage and that "one that is not recorded is a nullity" (Docket No. 23). As alleged

by the Plaintiffs "…any other accessory documents or alleged guarantees signed by Debtor and Retiro for purposes of supporting the mortgage loan are a nullity and unenforceable in the bankruptcy court". For the stated reasons, the Plaintiffs objected the *Motion to Dismiss*, affirming that the complaint pleaded correctly that Retiro violated the automatic stay, and that the complaint stated plausible claims for relief for willful stay violations.

The Defendant filed its *Reply to Plaintiff's Response to Defendant's Motion to Dismis*s on July 13, 2016 (Docket No. 24). Retiro stated that regardless of the mortgage being void, the Retiro loan continued to be a secured claim, because 33 L.P.R.A. §779a(c) grants a statutory lien on debtor's retirement funds and benefits. The Defendant alleged that, at the moment a participant voluntarily decided to obtain a loan from Retiro, a statutory lien attaches to all the contributions accrued and to be accrued on behalf of the borrower in the System, as well as all the savings he might have with AEELA, including any other benefit or payment, which the participant might earn from the government of the Commonwealth of Puerto Rico, as provided by statute. Retiro alleged that the lien is effective by operation of law and that the Debtors had not presented any legal authority requiring any further act for its statutory lien to attach.

The Plaintiff's filed a *Sur-Reply to Motion to Dismiss*, alleging that a mortgage could not be called a personal loan, for purposes of enforcement of the automatic stay under the Code, and that Retiro was attempting to "transmute a mortgage loan into an ordinary personal loan to bring it under the stay-exempt provisions of 362(b)(19)" (Docket No. 26). The Plaintiff alleged that the mortgage was a consensual lien supporting a secured transaction much greater than Debtor's accumulated retirement savings account and that "…a personal loan of the type specifically incorporated into the Code from subchapter III of chapter 84 of Title 5 of the US Code that satisfies the requirements of section 8433(g), cannot be greater than Debtor's accumulate retirement savings." Aditionally, the Plaintiffs alleged that considering the nullity of the mortgage, any other accessory documents or alleged guarantees signed by the Debtor and Retiro for purposes of supporting the mortgage loan are a nullity and unenforceable. The court heard the parties on September 9, 2016 (Docket No. 29). The *Motion to Dismiss* and its *Reply* were held in

abeyance and the parties were granted time to file a settlement agreement and to file dispositive motions.

On February 28, 2017, the Plaintiffs filed their *Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Docket No. 41). The Plaintiffs clarified that there was only one legal issue remaining to be addressed by the court, that is, if Retiro's statutory lien under Article 4-106 attaches to the Debtor's post-petition contributions accumulated in his retirement account.[1] As posed by the Plaintiffs, the bankruptcy law cuts off and voids Retiro's statutory lien, starting from the date of the petition, while Retiro argues that its lien continues to attach to the contributions deposited in the Debtor's retirement account on a post-petition basis. The Plaintiffs allege that "settled bankruptcy law compels that Retiro's alleged statutory priority over the post-petition funds in Debtor's pension account must be subordinated to the paramount public policy underlining the discharge and the Debtors' right to a fresh start…" The Debtors argue that Retiro's initial lien originates from an unrecorded mortgage loan and, therefore, a security interest. As the lien was unrecorded in the Property Registar at the moment of the petition, the Debtors argue that the filing of the petition nullified the debtors' mortgage obligation and, therefore, also nullified the continuing nature of the statutory lien. The Debtors, citing In Re West, 128 F. 205 (D. OR. 1904), allege that, considering that the initial loan was a mortgage loan, it cannot "continue under the guise of some other loan or obligation and the lien must fail". The Plaintiffs further state that the holding in In Re Miranda Soto, 667 F.2d 235, 237 (1st Cir. 1981) is applicable to the present situation. The Plaintiffs state that AEELA's continuing statutory lien operates similarly to Retiro's lien. In In re Miranda, the United States Court of Appeals for the First Circuit determined that an assignment of future property could only attach to property rights that a debtor had at the time of the filing of the petition. The Plaintiffs additionally argue that the facts in In Re Feliciano, 111 B.R. 380 (Bankr. D.P.R. 1990) are "identical" to the present case, as "Retiro is asserting an analogous statutory lien under Article 4-106 in order to attach funds deducted from the Debtor's

---

[1] The Plaintiffs informed the court that the parties had reached a settlement agreement as to every other factual and legal issue alleged in the Complaint and that the settlement was pending final approval of Retiro's Board of Trustees.

post-petition wages and deposited in his retirement account. Funds that exist only by virtue of the fruits of Debtor's post-petition labor." The Plaintiffs further state that "[a] statutory lien must yield to the fundamental; public policy of the bankruptcy discharge and fresh start".

On March 21, 2017, Retiro filed its *Response to Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Docket No. 42). The Defendant argues that it has a statutory lien as defined by Section 101 of the Bankruptcy Code, which arises solely by force of state law, referencing Article 4-106 of Law 447-1951, supra, 33 L.P.R.A. §779a(c), that attaches to all the contributions accrued and to be accrued on behalf of the borrower in the System, as well as other benefits, as provided by statute. Retiro argues that the lien commenced at the moment the participant decided to obtain the loan from Retiro and that the Defendant needs not to act further for the lien to attach. Therefore, as argued by the Defendant, the lien is not dependent on the inscription of the mortgage deed. Although there was no mortgage at the time of the filing of the petition, "as soon as the debtor received the loan and the creditor accepts the promissory note accepting the debt, the mortgage contract becomes valid and binding for one and the other contracting party", c*iting* Lietchy v. Descartes Saurí, 109 D.P.R. 496 (1980). The Defendant argues that the lien will continue to attach to the co-debtor's contributions made to his retirement account, only up to the amount that may correspond to the value of the debt. Retiro further clarified that the decision in In Re Feliciano cited by the Plaintiffs discussed a lien that arose from a security interest assigned by the debtor through a promissory note and not by a specific statutory mandate. Furthermore, Retiro argues that the Court in Fonseca v. Gov't Emples. Ass'n (AEELA), 542 B.R. 628 (B.A.P. 1st Cir. 2015) recognized that although, generally, a lien can only attach to property that the debtor owned, or had rights to, at the time of the filing of the bankruptcy petition, there are, however, exceptions to the general rule, as, for example, some statutes specifically expanded the scope of the lien to include after-acquired property. Moreover, the In Re West and In Re Miranda decisions also refer to liens held on account of a security interest and not a statutory lien. The Defendant additionally alleges that the Debtors' debt to Retiro is nondischargeable

pursuant to 11 U.S.C. §523(a)(18) and that the debtor's contributions to the retirement funds are not property of the estate as excluded by §541(b)(7)(i)(l).

On April 10, 2017, the parties filed a *Stipulation and Partial Settlement Agreement*, agreeing upon all matters presented in the Complaint, except for the following: (1) whether Retiro has a statutory lien over the totality of the debtor's retirement funds and benefits-including future funds or contributions made by the debtor to the retirement system, or if the statutory lien only applies to the retirement funds accumulated up to the filing of the plaintiffs' bankruptcy petition on March 12th, 2012, and (2) Whether any portion of Retiro's claim shall be discharged in bankruptcy (Docket No. 43). The Stipulation was approved on May 5, 2017 (Docket No. 51).

On May 30, 2017, the Plaintiffs filed a *Reply in Support of Summary Judgment* (Docket No. 57). The Debtors reargued there position as to the statutory lien, and, additionally, argued that the unrecorded mortgage loan was made relying on the mortgage agreement itself, and not on the statutory lien of Article 4-106, in order to enforce its claim and that the statutory lien is an "afterthought" of Retiro, upon realizing that the mortgage is unenforceable. The Debtors additionally argue that, as in In Re Rivera Feliciano, Retiro's claim is a security agreement and that, as in said case, "the assignment of debtor's wage deductions contributed to the pension fund held by Retiro… is limited to those wages earned and deducted on the date this petition was filed." The Debtors allege that Retiro's "…reliance on 523(a)(18) is misplaced because that statute only regulates the effect of the discharge upon personal loan benefits to thrift savings plan participants and must not be confused with mortgage loan benefits offered under those plans at issue in this proceeding. As such, Retiro's main defense against the obvious inapplicability of a continuing lien to the discharged mortgage claim is flawed because we are not dealing here with a "personal loan" obligation".

On June 8, 2017, the court requested the parties to inform if the present adversary proceeding was stayed pursuant to 48 U.S.C. §§ 2161 and 2164 on account of the filing of the Title III Petition (Docket No. 58). On August 11, 2017, Retiro filed a *Notice of Commencement*

*of Case Under Title III of PROMESA and of Automatic Stay Proceedings*, requesting the court to stay the proceedings (Docket No. 71).

On December 13, 2017, The Plaintiffs filed their *Memorandum of Law Re: Orders at Docket 58, 67 (Remaining Cause of Action and Applicability of PROMESA)* (Docket No. 87). The Plaintiffs argued that the Stay of PROMESA was not applicable to the present adversary proceeding, as the issues pending for the court's consideration did not fit as a "liability" pursuant to the definition included in 48 U.S.C. §2194 and stated that Retiro had voluntarily submitted the remaining issues to this court's consideration through the *Stipulation and Partial Settlement* filed between the parties.

On January 24, 2018, Retiro informed the court that the parties were discussing the possibility of requesting the Relief of Stay in the PROMESA case to continue with the proceedings in the adversary proceeding and requested the court additional time to inform (Docket No. 93). On July 26, 2018, The Plaintiffs informed the court that they Stay had been lifted in the PROMESA case, to continue the present proceedings, allowing the court to adjudicate the *Summary Judgment* files the Plaintiffs and its *Opposition* thereto (Docket No. 103).

Applicable Law and Analysis

a. *Standard for Summary Judgment*

Fed. R. Civ. P. 56, applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7056, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also* In re Colarusso, 382 F.3d 51 (1st Cir. 2004), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in

which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d, Vol 10A, § 2712 at 198 (2013). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex, 477 U.S. at 322. The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). *See also* López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there

is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. Also see Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). Also see Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

After settling several of the controversies initially presented in the adversary proceeding, the parties acquiesce that only two issues remain to be addressed by the court, that is: (1) whether Retiro has a statutory lien over the totality of the debtor's retirement funds and benefits, including future funds or contributions made by the debtor to the retirement system, or if the statutory lien only applies to the retirement funds accumulated up to the filing of the plaintiffs' bankruptcy petition on March 12th, 2012 and (2) whether any portion of Retiro's claim shall be discharged in bankruptcy.

b. *Statutory Liens as defined by the Bankruptcy Code*

The Bankruptcy Code defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The Code classifies liens into three (3) categories: judicial liens, statutory liens, and security interests. A

statutory lien is defined as "a lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53). On the other hand, the Code defines a security interest as a "lien created by an agreement," 11 U.S.C. § 101(51), and a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding," 11 U.S.C. § 101(36). See In Re Cruz, 75 B.R. 56 (Bankr. D.P.R. 1987). "The Code thus contemplates that liens created consensually (such as mortgage liens or UCC security interests) or by judicial action (such as judgment liens, attachments, equitable liens or levies) are not "statutory liens," while liens that come into being as a result of statutory operation, without consent or judicial action, are "statutory liens." Klein v. Civale & Trovato (In re Lionel Corp.), 29 F.3d 88, 94, (2d Cir. 1994). Statutory liens are recognized in bankruptcy subject to the trustee's avoidance powers under Section 545. In re Figueroa, 1985 Bankr. LEXIS 6901 (Bankr. D.P.R. 1985).

"A statutory lien is limited and quantified; if certain events or circumstances occur as articulated in the statute, a lien arises that is statutory in nature and unavoidable." In re Leaks, 552 B.R. 741, 747 (Bankr. E.D. Ark., July 8, 2016). *See also* Braxton v. Bureau of Unemployment Compensation Benefits & Allowances (In re Braxton), 224 B.R. 564 (Bankr. W.D. Pa. 1998).

The United States Court of Appeals for the First Circuit recently discussed statutory liens and described its principal characteristics in the bankruptcy setting:

> "Under the Code, a statutory lien "aris[es] solely by force of a statute on specified circumstances or conditions." 11 U.S.C. § 101(53) (emphasis added). In other words, a statute can create a lien outright or it can establish that a lien will attach automatically upon an identified triggering event other than an agreement to grant the lien. See S. Rep. No. 95-989, at 27 (1978) ("A statutory lien is . . . one that arises automatically, and is not based on an agreement to give a lien or on judicial action."); see also Klein v. Civale & Trovato, Inc. (In re Lionel Corp.), 29 F.3d 88, 94 (2d Cir. 1994) (characterizing statutory liens as "liens that come into being as a result of statutory operation, without consent or judicial action"). Take two examples: contractors' liens and tax liens. See 2 Collier, supra, ¶ 101.53 (identifying contractors' liens

and tax liens as "[g]ood examples of statutory liens"); see also S. Rep. No. 95-989, at 27 (same). Contractors' liens, also known as mechanics' liens, "are creatures of statute," in that they "arise and are created by force of statute." 53 Am. Jur. 2d Mechanics' Liens § 3. Every state has a mechanics' lien law. Id. § 6. While these laws vary considerably across jurisdictions, id. § 8, and often require certain procedures for recording and enforcing the lien, the general concept is that when an individual supplies labor, materials, or services to improve the property of another, his claim for payment becomes a lien on the owner's property. Id. § 12; see also id. § 1. Once a worker furnishes labor or materials, a statutory lien often arises automatically without any further action. See id. § 1. The same is true of a tax lien in favor of the federal government. See 26 U.S.C. § 6321 (establishing that when an individual liable for taxes "neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person"). For both mechanics' liens and tax liens, the relevant statute specifies a circumstance or condition (the furnishing of labor or the refusal to pay taxes after demand) and provides (often through the use of mandatory "shall" language) that when the specified circumstance or condition is satisfied, the lien attaches.

Fin. Oversight & Mgmt. Bd. v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight & Mgmt. Bd.), 899 F.3d 1, 11-12 (1st Cir. 2018).

"A lien created by statute is limited in operation and extent by the terms of the statute and can arise and be enforced only in the event and under the facts provided for in the statute." Fonseca v. Gov't Emples. Ass'n (AEELA), 542 B.R. 628, 634 (1st B.A.P. 2015) *citing* Fleet Credit Corp. v. TML Buys Sales, Inc., 65 F.3d 119 (9th Cir. 1995).

The parties concede that, originally, the loan provided to the Debtor was intended to be a mortgage loan. However, the mortgage was not presented at the Property Registrar at the time of the filing of the petition. Therefore, Retiro had no perfected consensual lien over the debtors' real property. However, "..statutory liens operate independently from a security agreement." In Re Cruz, 75 B.R. 56 (Bankr. P.R. 1987). (Determining that even when a pledge agreement was not perfected, the statutory lien subsisted.)

"The difference between statutory liens and security interests is sometimes obscure. Security interests "commonly find authorization and clarification in existing state statutes. . . ."

Alliance Capital Management L.P. v. County of Orange (In re County of Orange), 189 B.R. 499, 502 (C.D. Cal. 1995), *citing* Seel v. Topeka Lumber Co. (In re Seel), 22 Bankr. 692, 695 (Bankr. D. Kan. 1982). Although "statutory liens most commonly arise only if a contract exists between the debtor and the lien claimant…[i]n distinguishing between the two, the focus is on the presence of a contract provision granting a property interest to the claimant and on the extent to which that contract provision is a necessary condition precedent for the existence of the lien. If such contractual grant is a necessary precondition, the lien is not a statutory lien even though state statutes define the scope and quality of the property interest in detailed terms." *Id*. However, as stated in In Re County of Orange, there can be simultaneous separate liens, contractual and statutory, where "contract grant is present even though it is not a necessary condition precedent to the creation of a lien". "Whether a separate security agreement or not, the documentation between the parties does not displace the statutory lien." *Id*.

Law No. 447 of May 15, 1951, as amended, created the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico. 3 L.P.R.A. §761. In its pertinent part the Law No. 447 states:

> "The Administrator is hereby empowered to collect, from any amount a participant is entitled to receive as a final liquidation for accrued regular vacation or sick leave owed by the agency, entity, or department in which he/she worked or from the savings liquidation that the Puerto Rico Government Employee Association must make, or from the contributions or interest accrued on the System, any amount owed for personal, cultural, or mortgage loans, or loans originated as provided in §785a of this title, by said participant when she/he permanently ceases or separates from service. Debts owed to the System on account of personal, cultural, or mortgage loans, or loans originated or acquired by a savings and credit union of the Cooperative Bank of Puerto Rico, as provided in §785a of this title, shall have priority over any other debt of the participant. The Administrator shall determine the manner and conditions under which such loan amounts and any interest accrued thereon, with respect to the loans of the System, shall be collected.
>
> Personal loans originated or acquired by a savings and credit unions of the Cooperative Bank of Puerto Rico up to the limit provided in §785a of this title, and personal, mortgage, and cultural loans originated by the System [Employees Retirement System] shall be secured, with priority over any other debt, by the contributions made and

subsequently accrued in the System, the pension, benefit, or reimbursement exceeding the contributions designated by the participant or pensioner pursuant §§785-779a of this title, and in the amount that, in case of death of the participant or pensioner, may correspond to his/her estate or any beneficiary as designated by the participant by him/her according to the provisions of §§779-779c of this title. The statutory lien created in this section 4-110 shall remain in full force and effect in the event that mortgage or personal loans are transferred by the Administrator to third parties pursuant to §§779-779c of this title. Such contributions and amounts may be applied by the Administrator to the repayment of any debt owed on account of any loan that the participant or the pensioner may have with the System, savings and credit unions or the Cooperative Bank of Puerto Rico upon their request. Pensioners shall pledge their pension annuities to secure their loans with the same priority that participants pledge their contributions, benefits, or reimbursements. The priority among the debts owed by participants or pensioners to the System, savings and credit unions, and Cooperative Bank of Puerto Rico shall be determined based on the date on which such loans where granted." 3 L.P.R.A. 785a[2]

---

[2] Section 785a states the following in the original spanish version: "Se faculta al Administrador a cobrar, de cualquier suma que tenga derecho a recibir un participante como liquidación final por concepto de vacaciones regulares o licencia por enfermedad acumuladas que le adeude la agencia, dependencia o departamento en que trabajaba o de la liquidación de ahorros que le tenga que hacer la Asociación de Empleados del Gobierno de Puerto Rico, o de las aportaciones o intereses acumulados en el Sistema, cualquier cantidad que por concepto de préstamos personales, préstamo cultural, hipotecario o préstamo originado, según lo dispuesto en la sec. 785 de este título, adeude dicho participante cuando cese o se separe permanentemente del servicio. Las deudas con el Sistema por concepto de préstamos personales, culturales o hipotecarios y los otorgados o adquiridos por una cooperativa de ahorro y crédito y el Banco Cooperativo de Puerto Rico, según dispuesto en la sec. 785 de este título, tendrán prelación sobre cualquier otra deuda del participante. El Administrador determinará la forma y condiciones bajo las cuales se cobrarán dichos préstamos y sus intereses acumulados con relación a los préstamos del Sistema.

Los préstamos personales originados o adquiridos por una cooperativa de ahorro y crédito y el Banco Cooperativo de Puerto Rico, hasta el límite que se dispone en la sec. 785 de este título, y los préstamos personales, hipotecarios y culturales originados por el Sistema, estarán garantizados con prelación a cualquier otra deuda por las aportaciones y las que se acumulen posteriormente en el Sistema, la pensión, beneficio o reembolso, que excede las aportaciones asignadas por el participante o pensionado conforme las secs. 785 y 779a de este título, y por la cantidad que en caso de muerte del participante o pensionado pueda corresponder a sus herederos o cualquiera de los beneficiarios que el hubiere designado, según las disposiciones de las secs. 779 a 779c de este título. El gravamen estatutario creado en esta sección permanecerá con toda fuerza y vigor en el caso que los préstamos hipotecarios o personales sean transferidos por el Administrador a terceros conforme a la sec. 779a de este título. Dichas aportaciones y cantidades podrán ser aplicadas por el Administrador al pago de cualquier cantidad adeudada por concepto de un préstamo que tuviere el participante o pensionado con el Sistema, con las cooperativas de ahorro y crédito o el Banco Cooperativo de Puerto Rico, a solicitud de éstas. Los pensionados garantizarán el préstamo con su anualidad por retiro con la misma preferencia que los participantes garantizan con sus aportaciones, beneficios o reembolsos. La prelación entre las deudas que tenga un participante o pensionado con el Sistema, las cooperativas de ahorro y crédito y el Banco Cooperativo de Puerto Rico, se determinará basado en la fecha en que se otorgaron los préstamos." 3 L.P.R.A. §785a

As described in section 785a, Retiro's statutory lien has two aspects. First, the Retiro lien attaches to "...any amount a participant is entitled to receive as a final liquidation for accrued regular vacation or sick leave owed by the agency, entity, or department in which he/she worked or from the savings liquidation that the Puerto Rico Government Employee Association must make, or from the contributions or interest accrued on the System, any amount owed for personal, cultural, or mortgage loans, or loans originated as provided in §785a of this title, by said participant when she/he permanently ceases or separates from service".[3] However, this aspect of Retiro's statutory lien is not controverted in the present adversary proceeding. Secondly, Retiro's statutory lien is also secured and with priority over any other debt, "by the contributions made and subsequently accrued in the System, the pension, benefit, or reimbursement exceeding the contributions designated by the participant or pensioner pursuant §§785-779a […], and in the amount that, in case of death of the participant or pensioner, may correspond to his/her estate or any beneficiary as designated by the participant by him/her..." In this case, the Retiro's statutory lien specifically states that it attaches to future property, that is, all the contributions accrued or to be accrued in the System. This is precisely the statutory disposition in controversy in the present case.[4] Furthermore, the statute recognizes the possibility of a simultaneous consensual lien when it states that "the statutory lien created in this section 4-110 shall remain in full force and effect in the event that mortgage and personal loans are transferred by the Administrator to third parties…" 3 L.P.R.A. 785a

Similarly, section 779a(a)(1)(C), in relation to mortgage loans, states that "[t]he loan shall be secured by a first mortgage on the real property for whose acquisition, extension, or refinancing the loan was made, for the contributions accrued and to be accrued on behalf of the borrower in the System, and in the amount that may correspond to the estate or the person the borrower would have designated as a beneficiary in case of death of the borrower, as provided in §§ 773 and 774

---

[3] This aspect of the Retiro's statutory lien is similar to the AEELA's statutory lien, described by the Court in Fonseca v. Gov't Emples. Ass'n (AEELA) which the Plaintiffs reference for comparison.

[4] This language is particular to the Retiro lien, and not addressed by the court in Fonseca v. Gov't Emples. Ass'n (AEELA), as the attachment to post-petition contributions by means of statute is not embodied in the AEELA scenario.

-16-

or 786-10 of this title."[5] Retiro's statutory lien, again, extends to after acquired contributions of the borrower.

The Plaintiffs argue conspicuously that considering that the Retiro's loan was intended to be, initially, a mortgage loan which was not perfected in the Property Registrar, the loan is a "nullity" and, therefore, all other guarantees of the loan are not sustainable, including the statutory lien. However, the Plaintiffs agree that the statutory lien created by said loan attaches to the contributions already accrued in the System. The court notes that said position is contradictory to the allegation of "nullity" argued by the Plaintiffs. Furthermore, "[i]n a mortgage credit legal relationship two (2) elements coexist: the credit and the mortgage. Credit gives rise to the pertinent personal action, and the real liability derives from the security aspect of the mortgage. P.R. Prod. Credit Ass'n v. Registrar of Prop. of Ponce II, 123 D.P.R. 231 (1989); *See also* San Juan Credit v. Carrasquillo, 113 D.P.R. 181 (1982) ("[T]he intrinsic validity of the juridical business *inter partes*, would not be affected, that is the defective deed stood as evidence, as a private document even though it was not recorded in the Registry.") The court finds that, although the original intent of the loan was for it to be secured with the Debtors' real property, the fact that the mortgage was unperfected does not eliminate other guarantees, such as the statutory lien over the Debtor's contributions to the System. The consensual agreement is independent to the lien established by law and the contributions are an additional guarantee as it was clearly contemplated by the statute.

Therefore, the court needs to determine if the Retiro's statutory lien, which specifically extends to contributions "to be accrued in the System" and, therefore, after acquired property, continues after the filing of the bankruptcy petition.

---

[5] Section 779a states the following in the original spanish version: "El préstamo estará garantizado por primera hipoteca sobre los bienes inmuebles para cuya adquisición, ampliación o refinanciamiento se hizo el préstamo, por las aportaciones acumuladas y que se acumulen a favor del prestatario en el Sistema, y por la cantidad que en caso de muerte del prestatario pueda corresponder a sus herederos o a la persona que hubiere él nombrado beneficiario, según lo dispuesto en las secs. 773 y 774 o 786-10 de este título." 3 L.P.R.A. §779a

*c.* *The Extent of a Lien, Statutory and Consensual, After the Filing of a Bankruptcy Petition*

Section 552(a) provides the following, as to the extent of a lien after the commencement of a case: "[e]xcept as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." Section 552(a) specifically proscribes any lien resulting from a security agreement from attaching to property acquired after the commencement of a case. The Code recognizes the difference between the type of liens. However, section 552(a) only refers to security interests and not to statutory liens. Although the Bankruptcy Code enumerates on 11 U.S.C. §545 specific circumstances under which a statutory lien may be avoided, none is present in this case.

As stated by the Bankruptcy Appellate Panel for the First Circuit in Fonseca v. Gov't Emples. Ass'n (AEELA), "…generally a lien can only attach "to property that the debtor owned, or had rights to, at the time of the filing of the bankruptcy petition but does not survive to attach [to] the debtor's property that is acquired after filing the bankruptcy petition." *(omitted citations)* There are, however, some exceptions to and/or permutations of this general rule. For example, some statutes specifically expand the scope of the lien created by the statute to include after-acquired property." Fonseca at 638.

"By its terms, section 552(a) only applies to liens resulting from security agreements, not other types of liens such as statutory liens". Alliance Capital Management L.P. v. County of Orange (In re County of Orange), 189 B.R. 499 (C.D. Cal. 1995). Although one of the goals of § 552(a) is to further the fresh start policy of the Bankruptcy Code, the section remains silent as to statutory liens and its effect on property acquired post-petition. See Johnson v. RFF Family P'ship, LP (In re Johnson), 554 B.R. 448 (Bankr. S.D. Ohio 2016).

Some courts have rejected the post-petition attachment of statutory liens in the context of tax liens of the United States and local governments. See United States v. Sanabria (In Re Sanabria), 424 F. 2d 1121 (7th Cir. 1970); United States v. Gold (In Re Avis), 178 F.3d 718 (4th

Cir. 1999); United States v. Fuller (In Re Fuller), 134 B.R. 945 (1992); In re Earley, 305 B.R. 837, (2004); Drake v. Mass. Dep't of Revenue (In Re Drake), 434 B.R. 11 (2010); In Re Braund, 423 F. 2d 718 (9th Cir. 1970). *See also* In Re Warrior, 2018 Bankr. LEXIS 1494 (Although under Oklahoma law, judgment liens attached to the judgment debtor's after-acquired property, the debtors had not acquired any real property to which any lien could attach and there was no lien to be avoided.) These courts have interpreted section 362(a)(4) broadly, applying its effect to both, consensual and statutory liens. *See* Rodriguez v. Gelman (In Re Local Serv. Corp.), 503 B.R. 136 ("Reluctantly, then this Court joins the ranks of those courts who interpret "act" in §362(a)(4) broadly in order to achieve parity, while acknowledging that doing so violates general rules of statutory construction.") The courts find support in Local Loan Co. v. Hunt, 292 U.S. 234 (1934), which stated that "[a]n adjudication of bankruptcy, followed by a discharge, releases a debtor from all previously incurred debts, with certain exceptions not pertinent here; and it logically cannot be supposed that the act nevertheless intended to keep such debts alive for the purpose of permitting the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective or even arising from, or connected with, pre-existing property but brought into being solely as the fruit of the subsequent labor of the bankrupt". Therefore, these courts have determined that any attachment to post-petition acquired property is impeded by the imposition of the automatic stay of section 362 at the moment of the filing of the petition. However, as recognized by the court in In Re Drake, *supra*, neither the Supreme Court of the United States nor the United States Court of Appeals for the First Circuit have determined whether a tax lien can attach to property acquired post-petition.

Furthermore, the Retiro's statutory lien in this case presents a distinctive characteristic from the tax liens rejected above, that is, the Retiro's statutory lien is specific and limited, as to the "contributions made and those subsequently accrued in the System." Contrariwise, the tax liens discussed above are ample and attach to every property acquired after the lien is perfected. See IRS v. Orr (In Re Orr), 239 B.R. 130, 134 (1998) ("The statutory language used in § 6321 "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have….").

The court comprehends how a lien with such a broad scope may be inconsistent with the fresh start policy of the Bankruptcy Code. However, in Fin. Oversight & Mgmt. Bd. V. Fin. Oversight & Mgmt. Bd., 899 F. 3d at 7, the Court of Appeals for the First Circuit expressed that §552(a) does not applies to statutory liens.[6] As to the application of §552(a) "[s]ubsection (a) is intended to govern "the effect of a prepetition security in postpetition property [and] applies to all security interests as defined by section [101] of the Bankruptcy Code, not only to security interests governed by the Uniform Commercial Code." Because it is grounded in the Bankruptcy Code's definition of "security interest," found in section 101, subsection (a) is confined to consensual liens and does not extend to nonconsensual or statutory liens". 5 Collier on Bankruptcy ¶552.01[3] (Richard Levin & Henry J. Sommer eds., 16th ed.) Thus, the court is not persuaded by the Plaintiff's argument, alleging that the Retiro's lien disrupts the essence and purpose of the Bankruptcy Code.

### d. BAPCPA's Provisions Concerning Retirement Loans

"BAPCPA enhanced the status of pension loans in Chapter 13 cases. At confirmation, new subsection (f) to §1322 declares that a Chapter 13 plan may not "materially alter" the terms of a loan described in section 362(b)(19) and any amount required to repay such a loan does not constitute disposable income for purposes of §1325 [11 U.S.C. §1322(f)]." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §431.2 at ¶1, Sec. Rev. 14, 2007, www.Ch13online.com. Pursuant to section 1322(f), retirement loan repayments are a proper adjustment to disposable income. *See* In Re Gallichio, 2019 Bankr. LEXIS 110, 2019 WL 171468 (Bankr. D.N.J. Jan. 9, 2019). Aditionally, Section 541(b)(7) excludes from property of the estate "any amount withheld by an employer from the wages of employees for payment as contributions to (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security

---

[6] The pivotal issue in Fin. Oversight & Mgmt. Bd. V. Fin. Oversight & Mgmt. Bd. was to determine if Peaje had a statutory lien as Peaje argued, in order to obtain injunctive relief. Peaje's rights in the Title III proceeding differed considerably depending on whether it possessed a statutory lien or a lien resulting from a security agreement. Fin. Oversight & Mgmt. Bd. v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight & Mgmt. Bd.), 899 F.3d 1, 11-12 (1st Cir. 2018).

Act of 1974 or under an employee benefit plan which is a governmental plan under 414(d) of the Internal Revenue Code of 1986; (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986." 11 U.S.C. §541(b)(7)(A).

Retiro alleges that it is excepted to the effect of the automatic stay pursuant to Section 362(b)(19). Section 362(b)(19) states that the filing of a petition under section 301, 302, or 303 does not operate as a stay … "of withholding of income from a debtor's wages and collection of amounts withheld, under the debtor's agreement authorizing that withholding and collection for the benefit of a pension , profit sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, that is sponsored by the employer of the debtor, or an affiliate, successor, or predecessor of such employer- (A) to the extent that the amounts withheld and collected are used solely for payments relating to a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or is subject to section 72(p) of the Internal Revenue Code of 1986…"

Section 408(b)(1) of the Employee Retirement Income Security Act, 29 U.S.C.S. §1108, refers to "[a]ny loans made by the plan to parties in interest who are participants or beneficiaries of the plan if such loans (A) are available to all such participants and beneficiaries on a reasonably equivalent basis, (B) are not made available to highly compensated employees (within the meaning of section 414(g) of the Internal Revenue Code of 1986 [26 U.S.C.S. §414(g)] in an amount greater than the amount made available to other employees, (C) are made in accordance with specific provisions regarding such loans set forth in the plan, (D) bear a reasonable rate of interest, and (E) are adequately secured…" However, the Employment Retirement Income Security Act is not applicable to governmental plans[7]. 29 U.S.C. §1003(b)(1).

---

[7] "The term "governmental plan" means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C.S. §1002(34). Aditionally, the term "State" includes Puerto Rico. 29 U.S.C.S. §1002(10).

Therefore, we must refer to Section 72(p) of the Internal Revenue Code of 1986, which is applicable to government plans. 26 U.S.C. §72. Section 72(p) in its pertinent part, refers to loans treated as distributions under a retirement plan and includes the requirements of the loan and several exemptions. For purpose of this subsection, a government plan is a "qualified employer plan" and a "government plan" "…means any plan, whether or not qualified, established and maintained for its employees by the United States, by a State or political subdivision thereof, or by an agency or instrumentality of any of the foregoing."

If the Retiro's plan is qualified pursuant to 26 U.S.C. §401 and the Debtors' loan falls within the parameters of section 72(p), Retiro was excepted from the imposition of the automatic stay at the moment of the filing of the petition. Therefore, the rationale used by the courts to determine that tax liens cannot attach to property acquired post-petition is inapposite to Retiro's statutory lien, as the decisions are supported on section 362 and the imposition of the automatic stay upon the filing of a petition.

The Plaintiffs have argued that the retirement plan fails to meet the requirements of §362(b)(19), by attempting to differentiate the unperfected mortgage loan referencing 5 U.S.C. 8433(g) and arguing that the specific loan disputed in this adversary proceeding is not protected by 362(b)(19). However, 5 U.S.C. 8433(g) is inapplicable to the present controversy, as it regulates thrift savings plans under the Federal Employees Retirement System. No further legal arguments or pleadings are made by the Plaintiffs as to why the exception of §362(b)(19) is inapplicable. The court also notes that the Debtors claimed an exemption over the retirement contributions accrued pre-petition, pursuant to 11 U.S.C. §522(d)(12) which exempts "[r]etirement funds to the extent that these funds are in an account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457 or 501(a) of the Internal Revenue Code" (Docket No. 1, Lead Case No. 12-2105), and therefore, acquiesced to Retiro's compliance to, at least, the first prong of 362(b)(19). Moreover,

Retiro has affirmatively alleged their compliance with §362(b)(19) and the Plaintiffs have failed to provide legal or factual arguments to deny Retiro's position.[8]

Therefore, the court finds that Retiro's statutory lien attaches to contributions acquired post-petition by the Debtor. Section 552(a) is not applicable as it refers exclusively to consensual liens. Aditionally, the Retiro lien is specific and limited as it refers exclusively to contributions accrued and to be accrued in the Retiro system in contrast to the extent of tax liens, as discussed above, and, therefore, do not defeat the fresh start policy of the Bankruptcy Code.

e. *The effect of the Discharge upon Retiro's loan*

The Defendant argues that the loan in the present case is non dischargeable pursuant to Section 523(a)(18) which states:

> "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> ….
>
> (18) owed to a pension, profit sharing, stock bonus, or other plan stablished under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986 under
>
> > (A) a loan permitted under 408(b)(1) of the Employee Retirement Income Security Act of 1974, or subject to section 72(p) of the Internal Revenue Code of 1986; or
> >
> > (B) a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirments of section 8433(g) of such title;
>
> But nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title; or

---

[8] The Plaintiffs question the applicability of 362(b)(19) to the "unperfected mortgage loan", without sufficient factual or legal support, however admits to currently having another loan with Retiro and concedes that, considering that it is a "personal loan", it is subject to the automatic stay exception of §362(b)(19). The court finds that the Plaintiffs present conflicting positions as to the application of Section 362(b)(19).

…" 11 U.S.C. 523(a)(18).

In its pertinent part, as to the Chapter 13 discharge, Section 523(a) references §1328(b) which discusses the discharge for a debtor "…that has not completed payments under the plan…" and excludes §1328(a). Section §1328(a) is applicable to the present case as the Debtors have completed their payment plan. Section 1328(c), which incorporates the exceptions in section 523(a), is applicable when the debtor has not completed payments under the plan and is inapposite to the facts of this case. §1328(a) states that:

> "Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter [11 USCS §§ 1301 et seq.], the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title [11 USCS § 502], except any debt—
>
> (1) provided for under section 1322(b)(5) [11 USCS § 1322(b)(5)];
>
> (2) of the kind specified in section 507(a)(8)(C) [11 USCS § 507(a)(8)(C)] or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a) [11 USCS § 523(a)];
>
> (3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or
>
> (4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." 11 U.S.C. §1328(a)

Section 1328(a) specifically identifies which debts from 523(a) are excepted from discharge upon the completion of a payment plan. However, section 523(a)(18) is not amongst the exemptions from discharge under Section 1328(a).

"The Discharge available in chapter 13 is broader than the chapter 7 discharge in that certain debts not discharged in chapter 7 are dischargeable in chapter 13" 8 Collier on Bankruptcy ¶1328.02[2] (Richard Levin & Henry J. Sommer eds., 16th ed.). "…Those debts listed in section 523(a) that section 1328(a) does not explicitly except from a full-compliance discharge remain dischargeable in a chapter 13 case, notwithstanding their nondischargeability in chapter 7 case". Id. at 1328.02[3].

Therefore, the court concludes that Retiro's loan is dischargeable. However, "[a] discharge merely releases the debtor from personal liability on the discharge[d] debt; when a creditor holds a mortgage lien or other interest to secure the debt, the creditor's rights in collateral, such as foreclosure rights, survive and pass through bankruptcy" Bibolotti v. Am. Home Mortg. Servicing Inc., 2013 U.S. Dist. LEXIS 69242 at *22, 2013 WL 2147949 at *10 (E.D. Tex. 2013). See Johnson v. Home State Bank, 501 U.S. 78, 83, 111 S. Ct. 2150, 2153, 115 L. Ed. 2d 66, 74 (1991). ("[T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."). Consequently, although the Debtors released the personal liability of Retiro' loan through the discharge, the Defendant's lien continues to attach to the post-petition contributions to the retirement system, as stablished by the statutory lien.

### Conclusion

In view of the foregoing, as to the Plaintiffs claim asserting that Retiro's statutory lien was interrupted by the filing of the bankruptcy petition, the *Motion for Summary Judgment* (Docket No. 42) is denied. However, the court finds that the Debtors personal liability has been discharged pursuant to §1328(a).

Judgment will be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 16th day of May, 2019.

Enrique S. Lamoutte
United States Bankruptcy Judge

-25-